UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
Southern DIVISION
Misc. Case No. 7:24-MC-2-KS

**FILED**

JAN 16 2024

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY ___XMA___ DEP CLK

MARC COHODES, an individual,

    Movant,

v.

RODDY BOYD, an individual,

    Respondent.

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL NON-PARTY RODDY BOYD TO COMPLY WITH SUBPOENA

Marc Cohodes submits this Memorandum of Law in support of his motion, pursuant to Federal Rule of Civil Procedure 45, to compel Roddy Boyd to produce certain documents relevant to Cohodes's claims in *Cohodes v. MiMedx Group, Inc.*, et al., No. 3:22-CV-00368 (N.D. Cal.) ("the California Litigation"). Boyd possesses documents relevant to proving the California Litigation defendants illegally recorded Cohodes's phone calls, because Boyd communicated directly with defendant Derrick Snowdy—who made the illegal recordings— about those events. Although Cohodes has diligently pursued discovery for over a year, he has been unable to obtain documents or forthright testimony from Snowdy. Cohodes has no choice but to move to compel Boyd to produce the materials.

### I. STATEMENT OF THE CASE

#### A. The California Litigation

Cohodes, a stock market analyst, short seller, and former hedge fund manager, has exposed many companies' questionable practices over his 40-year career. Declaration of Leah Judge ("Judge Decl.") Ex. A ¶ 1. Cohodes's efforts to expose two firms—Concordia Healthcare ("Concordia") and MiMedx Group, Inc. ("MiMedx")—give rise to the underlying California Litigation.

Cohodes began building a short position in Concordia in late 2015 while publicly criticizing the company and its CEO. Ex. A ¶ 23. As Cohodes predicted, Concordia's share prices plummeted in 2016. *Id.* ¶ 26. Cohodes also became critical of MiMedx in late 2017; in 2020, MiMedx executives were convicted of securities fraud. *Id.* ¶¶ 80, 104. Cohodes's criticism of Concordia and MiMedx earned him enemies, including Danny Guy, the sole owner of Harrington Global Opportunities Fund ("Harrington"). When Harrington lost approximately $150 million on its investment in Concordia, Guy blamed Cohodes and other short sellers for the loss. *Id.* ¶¶ 4, 26.

Guy hired Snowdy, a Canadian private investigator, to conduct surveillance and record phone calls of Guy's perceived enemies, including Cohodes. Ex. A ¶ 4. Using false pretenses—and an introduction from Respondent Roddy Boyd—Snowdy entered Cohodes's California home in late 2016, ingratiated himself with Cohodes, and illegally recorded Cohodes's phone calls for several years. *Id.* ¶¶ 2, 8, 32-35. Guy and Snowdy then shopped these recordings and other improperly obtained information to a Canadian company, falsely claiming Cohodes was criminally conspiring to manipulate the company's shares and launder money. *Id.* ¶ 4. Guy also introduced Snowdy to MiMedx—which then separately hired Snowdy to surveille Cohodes in early 2018. *Id.* ¶ 6.

Cohodes discovered this history in 2021 when documents in two lawsuits were unsealed. Ex. A ¶ 8. In January 2022, Cohodes sued MiMedx, Guy, and Snowdy for: (1) Violation of the California Invasion of Privacy Act; (2) Violation of the federal Wiretap Act; (3) Defamation; (4) False Light Invasion of Privacy; and (5) Trespass. After extended jurisdictional and general discovery, Cohodes filed an amended complaint in December 2023, adding Harrington as a defendant.

2

### B. Roddy Boyd

Boyd, an acquaintance of Cohodes, is the editor and founder of the Foundation for Financial Journalism. Ex. A ¶ 31. At Snowdy's request, Boyd introduced Snowdy to Cohodes in 2016 (although Snowdy lied to Boyd about his intentions). *Id.* ¶ 32.

On May 12, 2021, after unsealed court documents revealed that Snowdy, Guy, Harrington, and MiMedx had illegally surveilled and defamed Cohodes, Boyd published "Danny Guy, Derrick Snowdy, and the Strange Wars of Confused Men." Judge Decl. Ex. B ("The May 2021 Article").[1] The article described Snowdy's illegal recording of Cohodes's calls and Snowdy and Guy's efforts to shop the recordings and other information about Cohodes to others. *Id.* pp. 9-11.

In the article, Boyd wrote that "[f]or six weeks" he had "been in frequent contact with Snowdy about his work for Danny Guy." *Id.* p. 16. Boyd continued, "**[q]uestions** begat more **questions** and Snowdy's **response** has never wavered. He insists that almost none of it happened." *Id.* (emphasis added.) When clicked, the words "questions," "questions," and "response" each link to screenshots of three emails between Boyd and Snowdy. Judge Decl. Exs. C, D, E. In the emails, Boyd expressed skepticism of Snowdy's denials, alluded to text messages exchanged with Snowdy, and appeared to attach emails between Guy and Snowdy. Exs. C, D. Boyd also told Snowdy, "you wrote that you and [Guy] had ***gotten around California's two-party consent rule for taping conversations***." Ex. D (emphasis added).

### C. The Boyd Subpoena

---

[1] *Available at* https://ffj-online.org/2021/05/12/danny-guy-derrick-snowdy-and-the-strange-wars-of-confused-men/ (last visited Jan. 9, 2024).

3

Cohodes served Boyd with two document subpoenas. The first, dated August 23, 2022, contained four requests seeking "all documents" in Boyd's possession "concerning" (1) Snowdy; (2) Guy; (3) MiMedx; and (4) "the recording of electronic communications to which [] Cohodes was a party." Judge Decl. Ex. F at 7-8. Boyd objected and refused to produce documents, invoking the reporter's privilege. *Id.* Ex. G at 2.

After Cohodes had engaged in nearly a year of discovery in the California Litigation, counsel for Cohodes and Boyd conferred on September 29, 2023. Judge Decl. ¶ 16. Cohodes offered to significantly narrow the subpoena, but Boyd indicated he would stand on his objections. *Id.* Nonetheless, Cohodes served Boyd with a substantially narrowed subpoena on October 11, 2023, that requested:

> **NO. 1:** All COMMUNICATIONS in YOUR possession between YOU and [] Snowdy CONCERNING introducing [] Snowdy to [] Cohodes.
>
> **NO. 2:** All COMMUNICATIONS in YOUR possession between YOU and [] Snowdy CONCERNING [] Snowdy's relationship with [] Guy.
>
> **NO. 3:** All COMMUNICATIONS in YOUR possession between YOU and [] Snowdy CONCERNING [] Snowdy's relationship with [] MiMedx.
>
> **NO. 4:** All DOCUMENTS in YOUR possession [] CONCERNING [] Snowdy's recording of electronic communications to which [] Cohodes was a party.
>
> **NO. 5:** All DOCUMENTS in YOUR possession [] referenced or cited in YOUR May 12, 2021 article entitled "Danny Guy, Derrick Snowdy, and the Strange Wars of Confused Men."

*Id.* Ex H. Boyd again refused to produce documents, raising eleven objections including the reporter's privilege and North Carolina's Shield Law. *Id.* Ex. I at 1-2.

On October 26, 2023, counsel again conferred. *Id.* ¶ 18. Boyd made clear that, on principle, he does not respond to subpoenas absent a court order. *Id.*

Cohodes now seeks to compel a further-narrowed production of only: (1) documents responsive to RFPs 1, 2, and 4; and (2) documents responsive to RFP 5 only if they are (i)

4

communications between Boyd and Snowdy or (ii) documents referenced in Boyd and Snowdy's communications.

## II. ARGUMENT

Cohodes's document requests fall into three categories: (1) documents that pre-date Boyd's newsgathering activities; (2) documents Boyd's May 2021 Article displays or quotes in whole or in part; and (3) documents not disclosed in the May 2021 Article. None of the documents Cohodes requests are protected by the qualified reporter's privilege. Even if the privilege protected any of the documents, Cohodes meets the showing *LaRouche v. Nat'l Broad. Co.*, 780 F.2d 1134 (4th Cir. 1986) requires to defeat the privilege.

### A. The Qualified Reporter's Privilege and North Carolina's Shield Law Do Not Apply to RFP 1.

RFP 1 seeks documents that pre-date Boyd's newsgathering activities and thus must be produced. The reporter's privilege applies to reporters only when they are engaged in newsgathering activity. N.C. Gen. Stat. § 8-53.11(b) (qualified privilege covers "information, document, or item obtained or prepared *while acting as a journalist*") (emphasis added); *State v. Demery*, 1995 WL 564654, *1 (N.C. Super. Jan 26, 1995) ("[t]he qualified privilege applies to all information acquired by a reporter *in gathering the news*") (emphasis added). Just as an attorney cannot invoke attorney-client privilege to shield a communication that neither provides nor seeks legal advice, a reporter cannot invoke the reporter's privilege to shield a communication unrelated to newsgathering.

Introducing Snowdy to Cohodes had nothing to do with newsgathering. As Boyd wrote and Snowdy confirmed at deposition, Snowdy requested an introduction because he allegedly shared Cohodes's skepticism of Concordia and Home Capital Group. Ex. B at 18-20; Judge Decl. Ex. J (Snowdy Transcript) at 110:3-14, 111:7-9. Although Snowdy simultaneously

5

provided Boyd with information for a story on Canadian National Railway, the introduction had nothing to do with that—or any—story. Ex. B at 18-20. Because Boyd was helping an acquaintance, not newsgathering, he cannot establish that the reporter's privilege protects his introduction-related communications with Snowdy. *McCoy v. City of Columbia*, 2012 WL 1752925, at *3 (D.S.C. May 16, 2012) ("[t]he burden of establishing entitlement to a privilege is on [its] proponent").

### B. The Remaining Documents Must Be Produced Under *LaRouche*.

The remaining documents—both those published with the May 2021 Article and those not—must be produced. "The First Amendment does not provide the press with an absolute shield from legal process." *Billioni v. Bryant*, 2015 WL 13951127, at *2 (D.S.C. June 11, 2015). Instead, evidence may be compelled from a reporter where: (1) it is relevant; (2) it cannot be obtained by alternative means; and (3) there is a compelling interest in obtaining it. *LaRouche*, 780 F.2d at 1139; *State ex rel. Cooper v. McLeod Oil Co., Ins.*, 2006 WL 2009079, at *2 (N.C. Super. Jan. 24, 2006) (North Carolina test "is essentially the same" as *LaRouche*). All three conditions are satisfied here.

#### i. The Documents Are Relevant to Cohodes's Claims.

Relevant information "help[s] to prove or disprove the existence of a claim." *Vengosh v. Jacobs Eng'g Grp., Inc.*, 2020 WL 5709256, at *5 (E.D.N.C. Sept. 24, 2020) (citation omitted). Cohodes's document requests seek information relevant to proving his privacy, wiretapping, and trespass claims.

RFP 4 seeks documents concerning Snowdy's recording of communications to which Cohodes was a party—the heart of Cohodes's privacy and wiretapping claims. If Boyd possesses such documents—and his May 2021 Article links to a document in which Boyd mentions Snowdy describing how he and Guy had "***gotten around California's two-party***

6

*consent rule for taping conversations*," Ex. D (emphasis added)—these are relevant and must be produced. Indeed, the document discussed in Exhibit D all but proves both Guy and Snowdy illegally recorded Cohodes's calls. Similarly, communications between Snowdy and Boyd cited or referenced in Boyd's May 2021 article (RFP 5, as modified above)—including exhibits C, D, and E—are relevant and must be produced.

Boyd's communications with Snowdy concerning Snowdy's relationship with Guy (RFP 2) will help establish an agency relationship, which underpins Guy's liability for Snowdy's recordings. To date, both Guy and Snowdy have denied any arrangement to surveille Cohodes. Judge Decl. Ex K (Guy Transcript) at 151:6-152:4; Ex. J. at 62:23-63:1. Any Boyd-Snowdy communication bearing on the Guy-Snowdy agency relationship must be produced.

Snowdy and Boyd's communications concerning Boyd's introduction (RFP 1) are not subject to the reporter's privilege. But even if they were, they will show the lies Snowdy told to induce Boyd to make the Cohodes connection. The communications support Cohodes's trespass claim because Snowdy gained access to Cohodes's home through fraud. See *People v. Oregon*, 2016 WL 2859506, at *3 (Cal. Ct. App. May 11, 2016) (consent to a trespassory taking may be "vitiated by fraud").

### ii. The Documents Cannot Be Obtained from Snowdy.

RFPs 1, 2, and 5 (as modified) seek communications between Snowdy and Boyd. "The *LaRouche* test does not ask whether there is other evidence[] that the [litigant] might rely upon as a substitute to prove [his claim]; it asks 'whether *the information* [sought from the reporter] can be obtained *by alternative means*.'" *United States v. Sterling*, 724 F.3d 482, 507 (4th Cir. 2013) (quoting *LaRouche*, 780 F.2d at 1139) (emphasis and third set of brackets in original). Cohodes can obtain the Boyd-Snowdy communications only from Boyd.

For more than a year, Cohodes has sought documents from Snowdy through discovery. Snowdy has not produced a single document. Judge Decl. at ¶ 21. Instead, Snowdy asserts "no responsive records exist" because the allegations against him are "false," *id.* Ex. L at ¶ 4, and his "devices were replaced and [he] [has] no detailed historical records prior to [May 2019]," *id.* Ex. M at ¶ 8. He has also asserted—incorrectly—that discovery is stayed as to him. *See, e.g.*, N.D. Cal. Case No. 3:22-CV-00368, Dkt. 112 (order confirming Magistrate's finding that no stay exists as to Snowdy).

Snowdy's deposition was similarly fruitless: questionable testimony, denials of the authenticity of emails plainly bearing his email address, and refusals to unequivocally authenticate the communications linked in Boyd's May 2021 Article (Exs. C, D, and E). *See, e.g.*, Ex. J at 197:9-200:23 Snowdy testified that Exhibit C "doesn't ring a bell;" that he had not seen Exhibit D before and "certainly wouldn't have [a copy of it] after May of 2019"; and that while Exhibit E "looks like something he wrote," he was unsure if he had it and would "have to check." *Id.* at 238:5-9, 241:2-9, 241:14-244:8. Snowdy has not produced these documents and, given his history of obstruction in this case and others,[2] Cohodes has no expectation that he ever will. This alone is sufficient to compel Boyd to produce them. *See Billioni*, 2015 WL 13951127, at *3 (ordering production of emails between plaintiff and news station where plaintiff did not produce them); *Alexis v. Kamras*, No. 3:19CV543, 2020 WL 2616705, at *6 (E.D. Va. May 22,

---

[2] Snowdy has a history of interfering with discovery. In *Canadian National Railway Company v. Holmes*, CV-08-7670-00CL (Superior Court of Justice – Ontario), a Canadian court found that Snowdy deliberately and improperly obtained documents subject to a court confidentiality order. Judge Decl. Ex. N. The court found that Snowdy falsely claimed he was unaware that the producing party sought the documents' return, that he later admitted he *was* aware, and that he took "extraordinary efforts" to remove the files from the jurisdiction, including taking the documents outside the Ontario courts' jurisdiction and telling the producing party's lawyers he would "sanitize" the documents if ordered to return them. *Id.* at 4, 7.

2020) (denying motion to quash subpoena where newspaper was "in sole possession" of requested evidence).[3]

Regarding RFP 4, neither Snowdy nor Guy admitted at deposition to recording, or directing the recording, of Cohodes's calls. *See* Ex. K at 151:6-152:4; Ex. J at 62:23-63:1. Cohodes has made diligent efforts to obtain the requested information elsewhere. *See Penland v. Long*, 922 F. Supp. 1080, 1084 (W.D.N.C. 1995) (court "satisfied that the information sought cannot reasonably be obtained by alternative means" even where movant did not depose witness "who may have overheard the information sought"); *compare State ex rel. Cooper*, 2006 WL 2009079, at *2 (granting motion to quash subpoena where the "person with first hand knowledge" had not been deposed). If Boyd possesses documents concerning Snowdy's recording of Cohodes, he should be compelled to produce them.

### iii. There Is a Compelling Need for Boyd's Documents.

"The test for whether there is a compelling interest in disclosing a piece of evidence turns on whether the evidence could play a role in the outcome in the proceedings." *Alexis*, 2020 WL 2616705, at *6 (internal quotation omitted); *Billioni*, 2015 WL 13951127, at *3.

Cohodes's need is compelling for the same reason the documents are relevant: the documents could help prove that Snowdy illegally recorded Cohodes while acting as Guy's agent, and that Snowdy trespassed on Cohodes's property by gaining access through lies told to Boyd. This is not mere speculation; Boyd's May 2021 Article makes plain that he possesses documents central to proving Cohodes's claims. *Compare Hatfill v. New York Times Co.*, 242 F.R.D. 353, 356 (E.D. Va. 2006) (finding no compelling need for reporter's notes where requesting party did "not have a clear idea of what information [the] notes contain"). Boyd's

---

[3] Boyd may assert the May 2021 Article itself provides the linked documents, but the Article cuts off the documents' text and the documents are not self-authenticating. *See* Exs. C, D, and E.

9

communications with Snowdy concerning Snowdy and Guy's evasion of California's two-party consent rule "goes to the heart of the case." *Miller v. Mecklenburg Cnty.*, 602 F. Supp. 675, 679 (W.D.N.C. 1985).

Moreover, the information sought from Boyd would not compromise the confidentiality of Boyd's sources—the source *is* Snowdy. This can and should tip the balance in favor of disclosure. *See Miller*, 602 F. Supp. at 680 ("The First Amendment protection against disclosure of the name of a confidential source is stronger than the protection against disclosure of non-confidential information revealed by that source.").

### C. Any Burden on Boyd Is Minimal.

Boyd's counsel has represented that, should Boyd be compelled to respond to the subpoena, the response would not entail a large volume of documents, and that collection would not require an extensive ESI review. Judge Decl. at ¶ 19. Boyd's burden would be minimal, and Cohodes will work cooperatively to reduce it further if possible.

### III. CONCLUSION

Cohodes respectfully requests that the Court grant his motion to compel.

This the 16th day of January, 2024.

Respectfully submitted,

/s/ *George F. Sanderson III*

George F. Sanderson III
N.C. Bar No. 33055
THE SANDERSON LAW FIRM PLLC
P.O. Box 6130
Raleigh, NC 27628
Telephone: (984) 867-9300
*george@georgesandersonlaw.com*

and

Leah Judge
CA SBN 302406

THE NORTON LAW FIRM PC
299 Third Street, Suite 200
Oakland, CA 94607
Telephone: (510) 906-4900
*ljudge@nortonlaw.com*

*Attorneys for Movant Marc Cohodes*

## ATTESTATION

Consistent with Local Rule 7.2(f)(3), I hereby attest that this memorandum contains 2,768 words.

/s/ George F. Sanderson III

11

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing was served on January 16, 2024 via United States First Class Mail, and via electronic mail, on the respondent as follows:

> Eric David
> Brooks, Pierce, McClendon, Humphrey & Leonard, LLP
> P.O. Box 1800
> Raleigh, NC 27620
> Email: *edavid@brookspierce.com*
> *Attorneys for Respondent Roddy Boyd*

and that the foregoing was also served via United States First Class mail, or First Class Mail International where indicated, on January 16, 2024 on the following parties to the California Litigation:

> James W. Christian
> Christian Attar
> 2302 Fannin, Suite 500
> Houston, Texas 77002
> Email: *JChristian@christianattarlaw.com*
> *Attorneys for Daniel Guy*

> Gustavo Lage
> Sanchez-Medina, Gonzalez, Quesada, Lage, Gomez & Machado, LLP
> 201 Alhambra Circle, Suite 1205
> Coral Gables, FL 33134
> Email: GLage@smgqlaw.com
> *Attorneys for Derrick Snowdy*

> MiMedx Group, Inc.
> Ashley Fickel
> Dykema Gossett
> 444 South Flower Street, Suite 2200
> Los Angeles, California 90071
> Email: AFickel@dykema.com
> *Attorneys for MiMedx Group, Inc.*

> Harrington Global Opportunity Fund **(Via First Class Mail International)**
> Clarendon House
> 2 Church Street
> Hamilton HM 11, Bermuda

12

Case 7:24-mc-00002-KS   Document 2   Filed 01/16/24   Page 12 of 13

This the 16th day of January, 2024.

/s/ George F. Sanderson III
George F. Sanderson III
N.C. Bar No. 33055
THE SANDERSON LAW FIRM PLLC
P.O. Box 6130
Raleigh, NC 27628
Telephone: (984) 867-9300
*george@georgesandersonlaw.com*