UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
Misc. Case No. 7:24-MC-2-KS

| | |
|---|---|
| MARC COHODES, an individual<br><br>           Movant,<br><br>v.<br><br>RODDY BOYD, an individual<br><br>           Respondent. | **RESPONSE IN OPPOSITION TO MARC COHODES'S MOTION TO COMPEL NON-PARTY RODDY BOYD TO COMPLY WITH SUBPOENA** |

       Respondent Roddy Boyd, pursuant to Local Rules 7.1 and 26.1, submits this Response in Opposition to Marc Cohodes's Motion to Compel Non-Party Roddy Boyd to Comply with Subpoena ("Motion"; ECF 1).

       Boyd is protected by the First Amendment, the reporter's privilege, and North Carolina's Shield Law from producing the requested documents. Cohodes has failed to meet the burden required to overcome these protections. Accordingly, the Motion should be denied, and the Court should enter an order declaring that Boyd need not respond to the Subpoena.

## STATEMENT OF BACKGROUND FACTS[1]

       Boyd, the editor and founder of the Foundation for Financial Journalism, is a nationally acclaimed investigative financial journalist who has made a career out of uncovering financial misdeeds and fraud.[2] Relevant here, Boyd published an article entitled "Danny Guy, Derrick

---

[1] Nothing in this Response should be deemed an admission that Boyd possesses responsive documents or that the facts set forth by Cohodes relating to Boyd are true.

[2] *See, e.g.*, Laura Hazard Owen, "This former hedge fund guy is a one-man nonprofit investigating some of America's shadiest companies," NiemanLab (Sept. 18, 2017), available at *https://www.niemanlab.org/2017/09/this-former-hedge-fund-guy-is-a-one-man-nonprofit-investigating-some-of-americas-shadiest-companies/*.

Snowdy and the Strange Wars of Confused Men" on May 21, 2021. Declaration of Leah Judge ("Judge Decl."; ECF 2-19) Ex. B (the "Article").

In 2022, Cohodes filed a lawsuit in the Northern District of California alleging various claims against MiMedx Group, Inc., Derrick Snowdy, Daniel Guy, and Harrington Global Opportunities Fund, LTD. Judge Decl. Ex. A. Among other things, Cohodes alleges that Snowdy unlawfully recorded and revealed phone calls between Snowdy and Cohodes at the direction of Guy, Harrington Global, and MiMedx, and that Snowdy unlawfully gained Cohodes's consent to enter his property by "falsely holding himself out as a person who was adverse to Concordia and Concordia's CEO Thompson and aligned with Cohodes." *Id*.

In that litigation, Cohodes served Boyd with two document subpoenas, both with four Requests for Production ("RFP"). Judge Decl. Ex. F, H. Boyd timely objected to both subpoenas and invoked the reporter's privilege, among other privileges. Judge Decl. Ex. G, I. Cohodes subsequently served a narrowed subpoena (the "Subpoena"), which includes RFP 1, 2, 4, and a narrowed version of RFP 5. Movant's Mem. 4–5, ECF 2.

These changes, however, did not resolve the fundamental problem—the Subpoena infringes on Boyd's constitutional, statutory, and common law rights.

## ARGUMENT

The First Amendment, common law, and North Carolina law protect journalists like Boyd from being forced to reveal their confidential and non-confidential newsgathering activities. Such protections are "necessary to ensure a free and vital press, without which an open and democratic society would be impossible to maintain." *Ashcraft v. Conoco*, Inc., 218 F.3d 282, 287 (4th Cir. 2000). Boyd invokes these well-established protections here.

I.  **Both federal and state law recognize the reporter's privilege, which protects journalists from compelled disclosure of confidential and nonconfidential newsgathering information.**

The reporter's privilege embedded in the First Amendment "protects against the invasion of a reporter's constitutional rights in gathering the news and safeguarding sources." *Livingston v. Kehagias*, No. 5:16-CV-906-BO, 2018 WL 1278190, at *1 (E.D.N.C. Mar. 12, 2018).

In *LaRouche v. Nat'l Broad. Co.*, the Fourth Circuit detailed a three-part test to analyze whether a subpoena to a journalist should be quashed: "(1) whether the information is relevant, (2) whether the information can be obtained by alternative means, and (3) whether there is a compelling interest in the information." 780 F.2d 1134, 1139 (4th Cir. 1986). The test has been applied "to both confidential and nonconfidential sources and information." *Livingston*, 2018 WL 1278190, at *2 (citing *Penland v. Long*, 922 F. Supp. 1080, 1084 (W.D.N.C. 1995)); *Church of Scientology Int'l v. Daniels*, 992 F.2d 1329, 1335 (4th Cir.1993) (applying *LaRouche* even though both the source and the materials were nonconfidential). The party seeking to overcome the privilege bears the burden. *See id.* (affirming privilege ruling because party seeking disclosure "failed to make the required showing for a need for the privileged materials").

North Carolina has codified the reporter's privilege at N.C. Gen. Stat. § 8-53.11. Under the statute, "[a] journalist has a qualified privilege against disclosure in any legal proceeding of any confidential or nonconfidential information, document, or item obtained or prepared while acting as a journalist." *Id.* § 8-53.11(b). To overcome this privilege, a person seeking to compel the production of information must establish by the greater weight of the evidence that the production sought: "(1) Is relevant and material to the proper administration of the legal proceeding for which the testimony or production is sought; (2) Cannot be obtained from alternate sources; and (3) Is essential to the maintenance of a claim or defense of the person on whose behalf the testimony or

production is sought." *Id.* § 8-53.11(c). "The test under North Carolina statutory reporter's privilege is essentially the same test that courts have applied in interpreting the federal and state constitutional provisions governing freedom of speech and of the press." *Vengosh v. Jacobs Eng'g Grp., Inc.*, No. 5:20-MC-20-RJ, 2020 WL 5709256, at *6 (E.D.N.C. Sept. 24, 2020) (quoting *State ex rel. Cooper v. McLeod Oil Co.*, No. 05-CVS-13975, 2006 WL 2009079, at *2 (N.C. Super. Ct. Jan. 24, 2006)).

In addition to Boyd's protections under the reporter's privilege, he also enjoys heightened protection as a non-party to the suit. *See McBride v. CBS Radio, Inc.*, No. CIV.A. 10-5463, 2011 WL 8072752, at *1 n.1 (E.D. Pa. Apr. 12, 2011) ("Courts also consider whether the member of the media is a party to the litigation, because it should be more difficult to compel production from a non-party witness who has no personal interest in the matter.").

"In the context of evaluating subpoenas issued to third parties, a court 'will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.'" *Vengosh*, 2020 WL 5709256, at *3 (quoting *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)). "The determination of the reasonableness of a subpoena requires the court to balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it, weighing the benefits and burdens, considering whether the information is necessary and whether it is available from another source." *Id.* As detailed below, Boyd's interest in safeguarding his rights as a journalist substantially outweighs any *de minimis* benefit Cohodes may assert in obtaining the documents.

## II. The reporter's privilege and the North Carolina's Shield Law apply to all RFPs.

Cohodes's sole argument that the reporter's privilege does not apply is directed to RFP 1—i.e., that it "seeks documents that pre-date Boyd's newsgathering activities." Movant's Mem. 5.[3] Cohodes asserts that the introduction of Snowdy to Cohodes "had nothing to do with newsgathering" and therefore is not protected. *Id.* This argument is without merit.

As outlined in Cohodes's own brief, the alleged introduction was made at Snowdy's request "because he allegedly shared Cohodes's skepticism of Concordian and Home Capital Group." *Id.* Boyd is a journalist who reports on this sort of financial skepticism. Thus, the introduction of Cohodes and Snowdy was not simply Boyd "helping an acquaintance." *See* Movant's Mem. 6; Judge Decl. Ex. B 18-20 (noting that Cohodes was Snowdy's "ticket into the broader short seller community"). Rather, according to Cohodes's own argument, this introduction was in furtherance of Boyd's journalistic endeavors, which is evidenced by the fact that the fraught relationship is a focus of Boyd's article. Judge Decl. Ex. B 18–20.

Furthermore, while admitting the introduction happened when Snowdy was simultaneously providing Boyd with information about a story, Cohodes asserts that "the introduction had nothing to do with . . . [a] story." Movant's Mem. 5–6. In reality, the reporter's privilege protects facts or information a journalist *acquires in the course of gathering the news*. *Penland*, 1995 WL 805177,

---

[3] Although he appears to question whether the privilege protects "any of the documents," *id.*, Cohodes makes no argument that the rest of the RFPs are not protected by the reporter's privilege. Because Cohodes concedes that the reporter's privilege applies to the rest of the RFPs, we focus on the applicability of the privilege to RFP 1.

In any case, all of the RFPs are plainly covered by the reporter's privilege. Any communications Boyd may have between him and Snowdy concerning Snowdy's relationship with Guy (RFP 2), as well as documents concerning Snowdy's recording of electronic communications to which Cohodes was a party (RFP 4) and documents that were referenced in the article (RFP 5) would have been gathered while Boyd was acting as a journalist. The best evidence of this is the article itself, which discusses the information Boyd collected for the story. Judge Decl. Ex. B.

at *1. Even if *arguendo* the introduction had nothing to do with the story Snowdy and Boyd were allegedly discussing, it was made "in the course of gathering the news" and is therefore protected. *See id.*

Cohodes's broad assertion that the so-called "introduction" was not "acting as a journalist" belies the reality of journalism. Journalists rely on sources and the information they are able to provide. Relationships are key to gathering news, which is why the identity of sources has been so robustly protected. In fact, Cohodes argues that Boyd was introduced to Snowdy by Carson Block in furtherance of a possible story. Judge Decl. Ex B 18-19. Then while Snowdy was allegedly discussing the story with Boyd, Snowdy asked to be introduced to Cohodes. Judge Decl. Ex B 19. Even assuming the truth of Cohodes story, Snowdy asked Boyd to introduce him to Cohodes while Boyd was plainly acting as a journalist.

Citing no authority, Cohodes asks the Court to define narrowly the term "newsgathering" and "acting as a journalist." However, his cramped definition is inconsistent with the "purpose of the privilege," which "is to assure to the fullest extent possible the full flow of information to the public." *State v. Demery*, No. 93 CRS 15288-90, 1995 WL 564654, at *1–2 (N.C. Super. Ct. Jan. 26, 1995) ("It is only by preserving the right of the press to avoid being made a part of a controversy merely as a result of its performing its constitutionally favored duties that the press may avoid the 'chilling effect' that the enforcement of these subpoenas would have on the flow of information to the press and to the public."); *Miller v. Mecklenburg Cnty.*, 602 F. Supp. 675, 679 (W.D.N.C. 1985) ("The compelled production of a reporter's resource materials can constitute a significant intrusion into the newsgathering and editorial processes." (quoting *United States v. Cuthbertson*, 630 F.2d 139, 147 (3d Cir. 1980)).

Applying the privilege as narrowly as requested by Cohodes would leave journalists uncertain about what information is protected, thus chilling the "full flow of information to the public"—the very purpose the privilege is designed to protect.

### III. Cohodes has not satisfied the *LaRouche* test.

Because the reporter's privilege applies in full to any requested documents, it is Cohodes's burden to overcome the privilege. He has failed to do so.

#### a. The Subpoena seeks information that is not relevant.

Cohodes contends that the "requests seek information relevant to proving his privacy, wiretapping, and trespass claims." Movant's Mem. 6. When determining relevancy, the court looks at the *degree* of relevancy the documents may have to the underlying action. *Vengosh*, 2020 WL 5709256, at *5. "The standard for relevance under *LaRouche* is higher than the standard under Rule 26. Under *LaRouche*, the information must be actually relevant." *Id.* (quoting *Hatfill v. New York Times Co.*, 242 F.R.D. 353, 356 (E.D. Va. 2006)). To determine whether the documents are relevant, courts examine the elements of the underlying claims. *See Gilbertson v. Jones*, No. 3:16CV255 (REP), 2016 WL 6518659, at *4 (E.D. Va. Sept. 22, 2016), *report and recommendation adopted*, No. 3:16CV255, 2016 WL 6518631 (E.D. Va. Nov. 1, 2016)

The documents Cohodes seeks are, at best, only tangentially connected to his claims. First, Cohodes simply asserts that RFP 5 is relevant to his claims. Movant's Mem. 7. This assertion is insufficient for Cohodes to meet his burden to establish that the privilege should be overcome. *See Goldberg v. Amgen, Inc.*, 123 F. Supp. 3d 9, 15 (D.D.C. 2015) ("Once the privilege's applicability is established, the burden shifts to [the party opposing the privilege] to show that on the specific facts of the case, its interest outweighs the public interest in protecting the journalist's sources and information." (internal quotations omitted)). Furthermore, RFP 1 is not relevant to Cohodes's

trespass claims because Boyd's "brief email introduction" of Snowdy and Cohodes has nothing to do with Snowdy visiting Cohodes's property, which is the essence of his trespass claim. Judge Decl. Ex. B, at 20; *Id.* Ex. A. 36-37 ("Cohodes would not have allowed Snowdy to enter or remain on his property, but for *Snowdy's material misrepresentations* and omission." (emphasis added)). Thus, the introduction is irrelevant to any "material misrepresentations" made by Snowdy.

### b. The documents requested can be, or have been, obtained from other sources.

Next, Cohodes contends that RFPs 1, 2, and 5 "seek communications between Snowdy and Boyd," and Cohodes can only obtain these communications from Boyd. Movant's Mem. 7–8. Similarly, Cohodes argues that RFP 4—which seeks all documents concerning Snowdy's recording of electronic communication to which Cohodes was a party—must be obtained from Boyd because "neither Snowdy nor Guy admitted at deposition to recording, or directing the recording, of Cohodes's call." Movant's Mem. 9.

Much of the information Cohodes seeks he *has already* received from other sources. In his brief, Cohodes discusses that Boyd not only wrote about the introduction but Snowdy was deposed and confirmed the information. Movant's Mem. 5; Judge Decl. Ex. 109–111 (Snowdy providing details regarding the introduction). Cohodes also admits that Boyd's article links to emails between Boyd and Snowdy. Movant's Mem. 3; Movant's Mem. 7 (admitting that the documents discussed in the article "all but proves both Guy and Snowdy illegally recorded Cohodes's calls"). Therefore, it is unclear what additional compelling information Cohodes believes he is going to get from Boyd, especially considering the minimal relevance the requests have to the litigation.

Furthermore, any such documents *can be* received from other sources. Snowdy is a party to the litigation and should be required first to turn over any responsive documents. Although Cohodes contends that Snowdy has been difficult to work with and has not turned over any

responsive documents, Movant's Mem. 7–9, Snowdy's dilatory conduct is insufficient reason to abrogate Boyd's First Amendment protections.

In his Memorandum of Law in Support of Motion to Transfer ("Motion to Transfer"; ECF 6), Cohodes notes that the presiding magistrate judge has ruled on several of Cohodes's discovery dispute letters concerning the difficulty in getting discovery from Snowdy. Mem. In Supp. Mot. Transfer 2–3. However, the magistrate judge only ordered the parties to "continue to meet and confer." N.D. Cal. No. 3:22-CV-00368, ECF 94 (August 2, 2023 Order regarding Discovery Letters); *Id.* ECF 103 (October 4, 2023 Order regarding Discovery Letters) ("Based on the Court's review, the parties have failed to adequately meet and confer.").

Therefore, Cohodes has not demonstrated that the requested documents are unavailable from other sources or that he has exhausted his efforts to get them from other sources. *Penland v. Long*, No. 1:94CV119, 1995 WL 805177, at *3 (W.D.N.C. Sept. 12, 1995) (granting a motion to quash a subpoena because the movant failed to demonstrate that she "exhausted other means for obtaining the information she seeks"); *Higgins v. Young*, No. 97CVD563, 2001 WL 1692379, at *2 (N.C. Super. Ct. Aug. 8, 2001) (finding that the requirements of N.C. Gen. Stat. § 8-53.11(c) to overcome the reporter's privilege had not been satisfied because "the information ha[d] not been unsuccessfully sought from all other available sources, and the Court [was] without knowledge of whether [the] information could have been obtained from other sources").

### c. There is no compelling reason for disclosure.

Cohodes argues that his need for the documents is compelling for the same reason the documents are relevant. Movant's Mem. 9. Cohodes conflates the documents' relevancy with there being a *compelling* interest in the information sought. Although Cohodes states that the documents could "help prove that Snowdy illegally recorded Cohodes while acting as Guy's agent, and that

Snowdy trespassed on Cohodes's property by gaining access through lies told to Boyd," Cohodes fails to demonstrate that the information sought is *essential* to the pursuit of his claims. *See Demery*, 1995 WL 564654, at *2 ("Accordingly the Defendant has failed to demonstrate that the information sought is essential to the pursuit of his Motion to Suppress or that there exists any other important state interest in compelling the reporters' testimony sufficient to override press freedoms.").

Moreover, Cohodes contends that it is not "mere speculation" what the documents could prove. However, as explained above, it is mere speculation that the documents will reveal more than what has already been revealed from other sources. Cohodes does not have a compelling need for whatever "additional information" he speculates he will receive from these RFPs. It is not sufficient that Cohodes simply wants and believes there is more information that may be helpful to his case. Nor does the parties' failure simply to admit to wrongdoing make the need for the information "compelling." *See* Movant's Mem. 9. Rather it is Cohodes' burden to show that the information is "*essential* to the maintenance of a claim or defense." N.C. Gen. Stat. § 8-53.11(c)(3) (emphasis added).

Finally, there is no merit to the argument that if the information would not compromise the confidentiality of Boyd's sources, Boyd receives less protection. Movant's Mem. 10. As already noted, the privilege protects confidential *and* non-confidential information. *Vengosh*, 2020 WL 5709256, at *4 ("[T]he First Amendment protects more than simply the identity of a confidential source.").

## CONCLUSION

Boyd respectfully requests that this Court deny the Motion and enter an order declaring that Boyd need not respond to the Subpoena.

Respectfully submitted, this 30th day of January, 2024.

/s/ Eric M. David
Eric M. David
N.C. State Bar No. 38118
BROOKS, PIERCE, MCLENDON
HUMPHREY & LEONARD, L.L.P.
P. O. Box 1800
Raleigh, NC 27602
Telephone: 919-573-6203
*Attorney for Respondent*

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was served on counsel for all parties of record by the CM/ECF System for the Eastern District of North Carolina, which will generate and send an e-mail notification of said filing to all counsel of record.

This the 30th day of January, 2024.

/s/ Eric M. David
Eric M. David